No. 89-077

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

IN RE THE MARRIAGE OF
ELAINE HARLAN RUDIO,

           Petitioner and Appellant,

   and

WILLIAM HARLAN,

           Respondent and Respondent.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Darla J. Keck; Datsopoulos, MacDonald & Lind, Missoula,
        Montana
        David B. Cotner; Boone, Karlberg & Haddon, Missoula,
        Montana

    For Respondent:

        Kerry N. Newcomer; Geiszler, Taylor, Newcomer & McClain,
        Missoula, Montana

_____

Submitted on Briefs:  July 7, 1989

Decided:  August 24, 1989

Filed:

_____
           Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment issued on the findings of fact and conclusions of law in the parties' marriage dissolution action in the Fourth Judicial District Court, Missoula County, Montana. Petitioner/appellant wife argues the court abused its discretion when it arbitrarily valued the husband's pension plan, awarded minimal maintenance to the wife for a limited period of time, and required the wife to pay her own attorney's fees. The findings and judgment of the District Court are reversed and remanded for a new trial.

Appellant Elaine Harlan (Elaine) and respondent William Harlan (Bill) were married March 10, 1962. At the time of the marriage, Elaine had just graduated from high school and Bill was a laborer for the predecessor of Stone Container Corporation. Bill has continued to work for the same company for the past 27 years.

Elaine was a housewife throughout the marriage. She raised the parties' two children, both of whom had reached the age of emancipation at the time of the parties' separation. Elaine also did the cooking, cleaning and shopping for the family. Elaine's work experience outside of the home was very limited, consisting of temporary part time work as a day care attendant, election judge, and home care attendant.

Bill completed an apprenticeship program with Stone Container and is now an industrial electrician. At the time of the trial, Bill's hourly wage was $17.65 per hour, or approximately $38,300 per year.

After 24 years of marriage, the parties separated in March of 1986. When Bill left the parties' home, no

2

arrangements were made for Elaine's financial maintenance. Consequently, during the 29 months between the time of separation and trial, Elaine spent all of the money from one of the parties' savings accounts, approximately $17,000, in order to live. During this same time, Bill consumed his regular take-home pay of more than $500 per week, and $175 per month which he received from a contract receivable. Additionally, Bill depleted all of the funds from another of the parties' savings accounts, which also amounted to approximately $17,000. All told, Bill spent over $71,750 during this period of time. He could not account for this money at trial.

Elaine was not informed by her original counsel that she could receive financial support from Bill during the period of separation. It was not until Elaine retained new counsel in 1988 that she sought an award of temporary maintenance. After notice of a hearing to set maintenance, the parties stipulated to a maintenance amount of $800 per month.

In March of 1988, Bill was "married" to Bonnie Lucier in Hawaii. Although Bill concedes the marriage is invalid, he and Bonnie Lucier live together, share monthly expenses, and expect to "remarry." Bonnie Lucier presently has assets of nearly $230,000, and earns between $600 and $800 per month from investments. Additionally, Bill's $175 per month contract receivable is payable through August, 2002.

Elaine requested an award of permanent maintenance because she had no income producing property, and no employment skills which would provide her with sufficient funds to cover her monthly expenses.

During trial, Kathy Kleinkopf, a certified rehabilitation counselor, described Elaine as fragile, nonassertive, extremely frightened, directionless, and

3

possessing a weak self-presentation. Kleinkopf stated that she did not believe Elaine had the skills to seek or get employment, in part because Elaine's work history was "non-existent for practical purposes." Kleinkopf recommended that Elaine enter a five-week pre-vocational program at the Missoula Vocational Technical Center, to be followed by six quarters of clerical training from the Vo-Tech Center which would take at least two years to complete. Kleinkopf stated that it would be more advantageous for Elaine to obtain a bachelor's degree from the University of Montana, a course of study which would last through June, 1993.

The parties did not dispute the value of most of their assets. At trial, however, Bill disagreed with Elaine's expert's evaluation that the Stone Container pension plan was worth $20,600. Bill stated the pension plan was only worth $10,000. He offered this round figure because he believed he had been exposed to asbestos at his work place. He concluded that since he is a smoker, he does not expect to live as long as the expert calculated. Elaine's counsel objected to this testimony because it was speculative and without foundation. The trial judge sustained the objection.

Bill also disagreed with Elaine's valuation of her automobile, a 1977 Pontiac. Elaine testified that the car got an average of ten miles per gallon and would soon need to be replaced. The Pontiac was appraised for purposes of the trial at $450. Bill disagreed and gave this unqualified opinion:

[Direct examination by Bill's counsel:]

Q. Did you have a chance to review the appraisal . . . for the '77 Pontiac?

A. Yes. I viewed it in your office the other night.

4

Q. Do you agree with that appraisal?

A. No, I do not.

Q. What do you think the car is worth?

. . .

A. Well, I know the car two and a half years ago was in excellent shape, the motor was taken care of extremely well by my father, the interior was spotless. That's why it was valued at that time --the lawyer that I had handling my father's estate --he said let's just slap three thousand dollars on it. I think it was worth more than that if we would have valued then.

Q. What do you think it's worth now? Just what do you think--

A. I would say it's worth at least fifteen hundred.

Elaine testified that her repairman found a leak in the 24-year-old roof of her house and that she obtained an estimate for its repair. The estimate presented at trial, for $1,470, was to lay new shingles over the old. She testified that she had since leaned the old shingles would have to be removed at an additional cost of $550.

Bill also disagreed with the estimate for the roofing job, however, he did not disagree that a repair was necessary. At trial, Bill gave his opinion that "I know that I could have it done cheaper . . . I think I can get it done for nine hundred."

In its findings of fact, conclusions of law, and decree of dissolution, the District Court divided the property essentially as the parties agreed:

5

## Property to Elaine Harlan

| | |
|---|---|
| Residence at 316 Dearborn (unencumbered) | $47,000.00 |
| Household furnishings (including player piano & other property in her possession except the property awarded Respondent below, presently in Petitioner's possession) | 3,500.00 |
| Dain Bosworth | |
|   Apache oil | 350.00 |
|   WIN cash account | 3,584.11 |
|   Great Falls municipal bond | 5,583.15 |
| Jones' Cable interest (approx.:) 9,000- | 15,000.00 |
| Elaine's IRA | 1,683.78 |
| 1977 Pontiac | 700.00 |
| 1975 Dodge pickup | 500.00 |
| WFS&L checking | 313.84 |
| ½ 1987 tax year refund | 665.50 |
| | $72,880.38--78,880.38 |

## Property to Bill Harlan

| | |
|---|---|
| Luptak Harlan Escrow (remains of father's estate) | 17,117.00 |
| Champion/Stone retirement | 10,000.00 |
| Dain Bosworth-IRA account | 11,573.00 |
| Personal Property (including all items in Bill Harlan's possession) | |
|   one kerosene decorator lamp | |
|   Grandmother's musical instrument | |
|   Grandfather's diamond willow cane | |
|   All father's tools, equipment and miscellaneous items (trunk with estate papers) | |
|   Remainder of Bill's hand and power tools | |
|   Other items from garage, i.e. battery charger | |
|   Grandmother's .32 cal. H & R revolver and cartridges | |
|   Ruger 10-22 cal. rifle | |
|   Firepoof box and contents, purchased by father | |
|   Tax returns and supporting documents for 1980-87 | |
|   3 h.p. Evinrude outboard and remote tank with oil | |
|   ½ h.p. motor and fan blade | |
|   Items purchased from Bill's Aunt Mary Lay | |
|   Father's golf clubs | |
|   Grandmother's coffee table from living room | |
|   ½ remaining silver coins or medallions | 2,000.00 |
| 1988 Ford pickup (subject to encumbrance) | 6,200.00 |
| ½ 1987 tax year refund | 665.50 |
| | $47,555.50 |

6

Although the court sustained counsel's objection to Bill's testimony regarding the value of the pension plan, it nonetheless accepted Bill's valuation and reasoning. In its opinion and order, the court made the following statement:

> Petitioner requests that the Court amend its Findings of Fact Nos. 19, 20 and 24 relating to the Court's valuation of Respondent's pension. Underpinning Michael Duffield's present value calculation for this pension is the assumption that Respondent has a life expectancy equal to that of other American males. Respondent's place of employment exposes him to toxic or harmful substances. Most American males do not work in this type of environment. Duffield's assumption disregards this exposure and renders present value calculations unreliable. The Court has rejected Duffield's testimony in this instance as not credible because his analysis disregards the environmental factors of Respondent's employment. (Emphasis added.)

The court ruled that Bill would pay Elaine $100 per week only while she is enrolled in the Missoula Vo-Tech program. The payments were not to exceed two years. The court reasoned:

> In the over two years between separation and trial Petitioner had access to savings, cash and in kind support from Respondent exceeding $26,000.00. Petitioner also received all the marital assets except Respondent's retirement, Respondent's IRA account, personal possessions and half of the 1987 tax year income tax refund.
>
> . . .
>
> The Court considered the expenses that Petitioner claimed at trial, her spending after the separation, the assets she was awarded and the factors set out

7

in §§ 40-4-202 and 40-4-203, MCA. The Court's award of short term educational maintenance was <u>designed to require Petitioner to responsibly marshal her resources and make choices as to how to apply her assets to achieve her goals.</u>

. . .

<u>It is unfortunate, but true, that a substantial portion of the marital estate was dissipated between separation and trial by Petitioner.</u> The opportunity to put those funds to more constructive use is forever gone. Petitioner's <u>track record</u> is such that it appears to the Court that her "needs" will always exceed the funds available to her. There was no convincing testimony at this trial to show why Petitioner should not be required to make the same choices about allocation of resources as other non-handicapped people. (Emphasis added.)

The court valued the 1977 Pontiac at $700 because Bill "thought" the car was worth more than the written appraisal and because of the "parties' respective biases regarding valuation." However, when Elaine valued the personal property remaining in her possession at $2,500 to $3,000, and Bill valued the same property at $3,500, the court valued the property at $3,500. Additionally, the court refused to award Elaine any funds for the repair of the roof because "[n]o necessity for immediate replacement was shown by Petitioner."

The District Court also accepted Bill's unsupported suggestion that Elaine could inherit property from her parents. In Finding of Fact No. 15, the court stated:

Petitioner's parents are in their seventies and are presently in good health. Petitioner's parents live comfortably. Petitioner <u>can expect a modest to substantial inheritance when</u>

8

> her parents die, barring unforeseen circumstances. (Emphasis added.)

The District Court disallowed any award of attorney's fees to Elaine because it concluded "Petitioner has sufficient property, cash and short term assistance to pay her own attorney's fees and costs."

Elaine raises the following issues for review:

1. Did the District Court abuse its discretion in its valuation of Bill's pension plan?

2. Did the District Court abuse its discretion when it awarded only $100 per week in financial assistance, and when it ruled the assistance was not to exceed two years?

3. Did the District Court abuse its discretion when it required Elaine to pay her own attorney's fees?

## Issue No. 1

Did the District Court abuse its discretion in its valuation of Bill's pension plan? There can be no question but that the court did abuse its discretion. There is absolutely no evidence in the record to support the court's valuation of the pension plan. Bill does not contest Elaine's expert's methodology in valuing the pension plan. He merely thinks the mortality table used by the expert does not apply to him. No doubt it would be helpful to such valuations if it were possible to determine exactly how long a person will live. However, such necessarily speculative devices must be utilized in order to make a reasonable calculation. As we held in In re Marriage of Bowman (Mont. 1987), 734 P.2d 197, 44 St.Rep. 488, it is an abuse of discretion to arbitrarily pick a method of calculation which enjoys no support from the record. Likewise, it is an abuse of discretion to arbitrarily value a pension plan through the use of no calculation whatsoever.

9

Bill had full opportunity to produce expert testimony or other reliable evidence which would illustrate that he has a shorter life expectancy than that used by the expert. However, Bill presented no evidence that his health was poor, no evidence that he was ever exposed to any toxic substances, no evidence that all other workers at Bill's place of employment died before reaching age 76, no evidence that Bill's life expectancy was anything other than age 76, and absolutely no evidence supporting the rough figure valuation of $10,000. That valuation was clearly in error.

Issue No. 2

Did the District Court abuse its discretion when it awarded only $100 per week in financial assistance, and when it ruled the assistance was not to exceed two years? When the marital property is properly considered and valued, it is clear the maintenance award was an abuse of discretion.

From the record it is apparent that the District Court was convinced of two things: 1) that Elaine was receiving the vast majority of the marital property; and 2) that Elaine spent too much money between the time of separation and trial. In spite of this, however, the court concluded Elaine was entitled to an award of maintenance.

If all of the marital property is properly valued, the difference between what each party will receive is not great. When the valuation of the car is recalculated, and the value of the pension is properly established, the property distribution will be much closer:

10

## Property to Elaine

| | |
|---|---:|
| Residence | $47,000.00 |
| Household furnishings | 3,500.00 |
| Dain Bosworth | |
|   Apache oil | 350.00 |
|   WIN cash account | 3,584.11 |
|   Great Falls Municipal Bond | 5,583.15 |
| Jones' Cable interest | 9,000.00 |
| Elaine's IRA | 1,683.78 |
| 1977 Pontiac | 450.00 |
| 1975 Dodge pickup | 500.00 |
| WFS&L checking | 313.84 |
| ½ 1987 tax year refund | 665.50 |
| | $72,630.38 |

## Property to Bill

| | |
|---|---:|
| Luptak Harlan Escrow | $17,117.00 |
| Champion/Stone retirement | 20,600.00 |
| Dain Bosworth-IRA account | 11,573.00 |
| Personal Property | 2,000.00 |
| 1988 Ford pickup | 6,200.00 |
| ½ 1987 tax year refund | 665.50 |
| | $58,155.50 |

Section 40-4-203, MCA, provides that the court may award maintenance if the spouse seeking maintenance:

(1) . . .

    (a) lacks sufficient property to provide for his reasonable needs; and

    (b) is unable to support himself through appropriate employment . . .

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

    (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . . ;

11

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

There is no evidence in the record that the District Court adequately considered the factors of § 40-4-203, MCA. Even though the marital property was not properly valued, it is evident that the court did not consider the nature of the majority of the assets awarded Elaine. In re Marriage of Tow (Mont. 1987), 748 P.2d 440, 44 St.Rep. 2154. By far the most valuable asset awarded to Elaine, the residence, is not income producing, but rather income consuming property.

The income producing property awarded to Elaine included:

| Dain Bosworth | |
|---|---|
| Apache Oil | $350.00 |
| WIN cash account | 3,584.11 |
| Great Falls Municipal Bond | 5,583.15 |
| Jones' Cable | 9,000.00 |
| WFS&L checking | 313.84 |
| ½ 1987 tax year refund | 665.50 |
| Total Income Producing Assets: | $19,496.60 |

Even a 10% annual return on this amount of money would only generate $1,949.96 per year before state and federal taxes are deducted. Elaine listed her monthly expenses as exceeding $800 per month, exclusive of any costs for

12

education and retraining. Additionally, Kleinkopf testified that the pre-vocational program would cost $199, and the Vo-Tech programs would cost $1,504 per year.

We conclude the court erred in awarding temporary maintenance of $100 per week in light of Elaine's financial resources, education and employment skills, age, physical and emotional condition, the duration of the marriage, the standard of living established during the marriage, and Bill's ability to provide Elaine with maintenance in an amount which is fair and just. In view of these factors, the temporary award of $100 per week was unjustified. There was no evidence which established what Elaine's income and expenses would be after she obtains employment. An assumption of self-reliance after that time is not supported by the record. Nor was there any evidence which would support a conclusion that Elaine would inherit anything from her parents. Further, an award of permanent maintenance may be modified or terminated to reflect a change of circumstances, such as these assumed by the court. Section 40-4-208, MCA.

Finally, there is no evidence to support a conclusion that Elaine spent too much money from the time of the separation to the date of the trial. While Elaine may have spent over $26,000, this amounts to less than $900 per month for the 29 month period. Still, while there was nothing more than Bill's insinuation that this amount was excessive, the $26,000 figure pales when compared to the nearly $72,000 spent by Bill during this same time period, an amount the court failed to consider in its distribution of the marital property.

13

Issue No. 3

Did the District Court abuse its discretion when it required Elaine to pay her own attorney's fees?  We conclude it did.  The District Court denied Elaine's request for attorney's fees and costs because it concluded she had sufficient property, cash and short-term assistance to pay them herself.  However, as we have concluded above, the court incorrectly valued the marital property and erred in awarding limited maintenance.  Therefore, and because we are returning this cause for a new trial, this issue must be re-examined by the court in light of a new property distribution or valuation, and award of maintenance.

Reversed and remanded for a new trial.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

14